Kulwinder Singh KINDA, Petitioner,

v.

BUREAU OF CITIZENSHIP AND IM-
MIGRATION SERVICES, by its DIS-
TRICT DIRECTOR OF the NEW
YORK DISTRICT, and Alberto Gon-
zales, Attorney General of the United
States of America, Respondents.

No. 04–1819–ag.

United States Court of Appeals,
Second Circuit.

Sept. 17, 2007.

Nicholas J. Mundy, Kuba, Mundy & As-
sociates, New York, New York, for Peti-
tioner.

Sheldon J. Sperling, United States At-
torney for the Eastern District of Okla-
homa, Gordon B. Cecil, Assistant United

States Attorney, Muskogee, Oklahoma, for Respondents.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROBERT A. KATZMANN, Hon. B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

Petitioner Kulwinder Singh Kinda, a native and citizen of India, seeks review of an April 2, 2004 order of the BIA affirming the June 2, 1999 decision of Immigration Judge ("IJ") Theresa Holmes–Simmons denying petitioner's application for asylum and withholding of removal. *In Re Kulwinder Singh Kinda,* No. A75 962 533 (B.I.A. Apr. 2, 2004), *aff'g* No. A75 962 533 (Immig. Ct. N.Y. City June 2, 1999). We assume the parties' familiarity with the underlying facts and procedural history of the case.

Where, as here, the BIA summarily affirms the decision of the IJ without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "In rejecting an applicant's account of persecution, the IJ must provide specific, cogent reasons for doing so, and those reasons must bear a legitimate nexus to the finding, and must be valid grounds for disregarding an applicant's testimony." *Li Zu Guan v. INS,* 453 F.3d 129, 136 (2d Cir.2006) (internal quotation marks and alterations omitted); *see also Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 334 n. 14 (2d Cir. 2006) (requiring that the basis of an adverse credibility determination be "material" grounds). If the IJ's reasoning or fact-

finding was sufficiently flawed, we will vacate and remand for new findings. *See, e.g., Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005).

The IJ denied Kinda's petition for asylum and withholding of removal on the basis of an adverse credibility determination. This determination rested on the IJ's findings that several of Kinda's allegations were implausible and that his account of persecution was internally inconsistent. Upon a review of the record, we conclude that the adverse credibility determination was not supported by substantial evidence.

The IJ concluded that Kinda's concession that he held "no important role" in the All India Sikh Students Federation ("AISSF") rendered his claim that "he had been beaten and tortured on three different occasions ... completely implausible and not believable." While an adverse credibility determination may be based upon the inherent implausibility of particular allegations, an IJ's finding of implausibility must not be based upon flawed reasoning, speculation or conjecture. *See Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003). In reaching her implausibility finding, the IJ did not rely on any evidence in the record supporting the proposition that the Indian police would only, or even primarily, target high-ranking members of organizations like the AISSF. Lacking any support in the evidentiary record, such a conclusion amounts to impermissible speculation.

The IJ also found implausible Kinda's allegations relating to the nature and disposition of the charges brought against him during his various arrests. Although Kinda testified that he had been charged with being a terrorist, the IJ found that the copies of two court judgments supplied by Kinda address only murder charges, not terrorism charges. This finding is not supported by the record because the documents do not specify any charges against

Kinda, except by reference to sections of a law entitled the "Terrorism and Disruptive Activities (Prevention) Act." Accordingly, a reasonable adjudicator would be compelled to accept Kinda's explanation that he was charged with being a terrorist.[1]

Furthermore, in finding Kinda's testimony not credible, the IJ found that Kinda's recollection of when he was released from prison was inconsistent with the information contained in a copy of a handwritten "certificate" supplied by Kinda. It is unclear who created this document, but it purports to explain the disposition of various charges brought against Kinda. The IJ asked Kinda to explain why the document states that Kinda was "released" on various dates in 1992 when he claims to have been imprisoned from June 1991 to January 1993. Kinda responded that he was not released from prison on those dates; instead, those dates corresponded to when specific charges against him were dismissed. Indeed, the "release" dates listed in the document appear to correspond directly to specific charges and the latest date is in January 1993. In denying Kinda's petition, the IJ merely noted that the "document clearly says the respondent was released on August 22, 1992, again in contradiction to the respondent's own testimony." By ignoring altogether Kinda's reasoned explanation of the certificate, the IJ impermissibly relied upon flawed reasoning in finding this inconsistency. *See id.* at 307.

The IJ also found Kinda's allegations relating to his medical treatment after his release in January 1993 inconsistent with his hospital records. While Kinda testified that he was hospitalized for thirty days,

the IJ observed that documentation from Kinda's hospital stated that he was only hospitalized for thirteen days. It is undisputed that Kinda correctly recalled multiple weeks of hospital treatment in Aur, India in January and February, 1993. Any discrepancy in the precise number of days in which he was actually hospitalized is not important enough to warrant a finding of implausibility. *See Xiao Ji Chen,* 471 F.3d at 334 n. 14.

Another basis for the IJ's adverse credibility determination was the June 1997 addendum to the U.S. State Department's June 1996 publication entitled "India: Comments on Country Conditions and Asylum Claims." The IJ quotes four sentences from this document in concluding that Kinda's testimony was not credible: "Life of Punjabi Sikhs and non-Sikhs alike is normal. There's no unusual security force present or curfew. Nighttime partying and wedding celebrations suspended during the worst of the violence are being enjoyed with typical Punjabi exuberance. The living situation in Punjab is by all accounts essentially normal." Although an IJ may rely on State Department publications in reaching an adverse credibility determination, *see Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 164 (2d Cir.2006), we have also warned that the IJ should not place "excessive reliance" on such reports, *see Tian–Yong Chen v. INS,* 359 F.3d 121, 130 (2d Cir.2004).

In this case, the June 1997 addendum, read as a whole, does not contradict Kinda's account. The addendum was written six years after Kinda alleged that the police first imprisoned and tortured him. Furthermore, while relying on four sen-

---

1. The IJ arguably also found that Kinda had not met his burden of proof of showing that this arrest, imprisonment and acquittal constituted persecution, not prosecution. We need not reach this issue because we remand the case to the BIA on the ground that the IJ erred in her adverse credibility determination.

However, we note that the IJ failed to address Kinda's subsequent periods of imprisonment in the absence of formal charges. If believed, Kinda's account of his multiple arrests may constitute persecution for purposes of the refugee statutes.

tences in the addendum about general conditions in Punjab, the IJ ignored more specific statements that the police still targeted individual Sikhs associated groups perceived as militant. In the absence of specific reasons articulated by the IJ why she concluded that four sentences of a State Department report renders Kinda's account incredible, we must conclude that this basis for denying Kinda's petition is not supported by substantial evidence. *See Cao He Lin,* 428 F.3d at 403–04 (remanding case to the BIA, in part, due to the absence of such articulated reasons).

Aside from her findings about the implausibility of Kinda's allegations and inconsistencies in his testimony, the only remaining basis for the IJ's adverse credibility determination was Kinda's demeanor. Specifically, the IJ found that Kinda "lacks in details and at many times he was hesitant and unresponsive." Witness "demeanor is paradigmatically the sort of evidence that a fact-finder is best positioned to evaluate," *Li Zu Guan,* 453 F.3d at 140, and we have often deferred to an IJ's demeanor findings, *see, e.g., Majidi v. Gonzales,* 430 F.3d 77, 81 n. 1 (2d Cir. 2005). However, in this case, the IJ provides no examples of testimony in which Kinda was lacking details, hesitant or unresponsive. To the contrary, the interpreter twice requested Kinda to slow down in telling his story. Even assuming that the IJ's observations of Kinda's demeanor were apt, we cannot say with confidence that the IJ would have still reached the same adverse credibility determination in the absence of the multiple errors addressed above. *See Li Zu Guan,* 453 F.3d at 141–42 (vacating and remanding to BIA); *Cao He Lin,* 428 F.3d at 406 (same).

Finally, the IJ found that Kinda presented no corroborative evidence that he was even a member of the AISSF. "[A]n immigration judge has the authority to deny eligibility for asylum in some cases where the applicant has failed to provide certain corroborative documents, even though the applicant testified credibly to facts that, if true, would qualify her for refugee status." *Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 153 (2d Cir.2003), *overruled on other grounds, Shi Liang Lin v. U.S. Dep't of Justice,* 494 F.3d 296 (2nd Cir. 2007) (in banc). However, we also held that "the IJ and BIA [have] no leeway to deny [an] application without first (a) pointing to specific pieces of missing, relevant documentation, and (b) showing that this documentation was reasonably available to [the petitioner]." *Id.* During the hearing before the IJ, the attorney for the government asked Kinda whether he had any documentation in support of his claim that he was a member of AISSF. Kinda merely responded that his brother had informed him that the police had continued to bother his family and that Kinda has no "link ... with anyone over there." Neither the IJ nor the government asked any follow-up questions. As in *Jin Shui Qiu,* the IJ here did not establish whether the AISSF actually kept membership records, let alone whether they might be reasonably available to Kinda. The IJ's failures to determine the reasonable availability of corroborative evidence and, if so determined, to give the petitioner an opportunity to provide it justifies remand to the BIA. *See Jin Shui Qiu,* 329 F.3d at 154 (noting that this requirement "constitutes one small, but crucial, defense against potentially mistaken, culturally based assumptions about the existence and availability of documents").

For the foregoing reasons, petition for review is GRANTED; the decision of the BIA is VACATED; and the case is REMANDED to the BIA for further proceedings consistent with this opinion.